937 So.2d 35 (2006)
Dexter WILLIAMS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-00411-COA.
Court of Appeals of Mississippi.
August 22, 2006.
*37 William C. Trotter, Belzoni, attorney for appellant.
Office of the Attorney General by Jose Benjamin Simo, attorney for appellee.
Before LEE, P.J., SOUTHWICK and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. Dexter Williams was convicted of capital murder in the Circuit Court of Washington County on April 18, 2003. He was sentenced to serve a term of life without parole in the custody of the Mississippi Department of Corrections. On July 8, 2003, the court entered an order denying Williams's motion for JNOV or, in the alternative, a new trial. Aggrieved, Williams appeals. Finding no error, we affirm.

FACTS
¶ 2. On June 30, 2000, at his home in Greenville, Mississippi, Williams was caring for his infant daughter and Shakyla Trisby, the two-year-old daughter of his girlfriend, Lisa Trisby, who was having her hair styled at McRae's. When Shakyla had a bowel movement in her pull-up diaper, Williams took the soiled diaper outside and ran a bath in order to clean her. According to Williams, as he walked past the bathroom to check on his daughter, he instructed Shakyla to get into the bathtub. Williams testified that when he returned to the bathroom, he found Shakyla standing at the back of the bathtub with her teeth chattering. Williams further testified that he removed Shakyla from the water and called her mother when he noticed that her skin was peeling away from her feet.
¶ 3. When Ms. Trisby returned, she took Shakyla to the Delta Regional Medical Center. After Shakyla was examined by a medical team, Martha Taylor, the night supervisor for the hospital, called the Department of Human Services (DHS) and the police because the medical team suspected child abuse. At the burn center, Dr. Robert Love treated Shakyla's injuries, and he performed two skin grafting procedures. Despite Dr. Love's efforts, Shakyla died of infection and multiple organ failure after twelve days of treatment.
¶ 4. On September 25, 2000, Williams was indicted by a Washington County grand jury for capital murder pursuant to Mississippi Code Annotated section 97-3-19(2)(f). A trial was held on April 14, 2003.
¶ 5. The State's first witness was Doreatha Williams, a social worker with the DHS who examined Shakyla and interviewed Williams. She testified that if a child younger than two had gotten into a bathtub on her own and had fallen down, the child would have suffered burns all over her body, due to the temperature. She further testified that Shakyla had suffered stocking burns and that such burns were inconsistent with Williams' version of *38 the events.[1]
¶ 6. Dr. Love testified that Shakyla was extensively burned (46 percent of her body) and that most of the burns were third degree. Specifically, Dr. Love testified that "37 percent [of the burns] was either deep second or superficial second, the rest of it was third degree." Dr. Love's examination revealed extensive burns on Shakyla's feet, legs, buttocks, and lower back, but no burns on her hands, arms, or front torso. Dr. Love testified that there were no splash marks on Shakyla's body. When asked to define "splash marks," Dr. Love explained that "when people are in . . . hot water, if they are splashing around or moving the water, it will splash up on them." Dr. Love further explained that the absence of splash marks on Shakyla indicated that she did not move around in the water. Dr. Love also testified, without objection from defense counsel, that Shakyla's injuries were likely caused by being held in hot water.
¶ 7. Dr. Stephen Hayne, a pathologist in the Department of Public Safety Medical Examiner's Office, who performed Shakyla's autopsy, testified as an expert in the field of forensic pathology. Dr. Hayne testified that Shakyla had extensive full thickness thermal burn injuries on her right and left lower extremities, including the bottoms of her feet. He further testified that he did not see any evidence of splash burns. Dr. Hayne explained that his job as a forensic pathologist required him to determined how the injuries and resulting death occurred. When given a hypothetical with facts identical to this case, i.e., a bathtub filled with hot water and a two-year-old child with injuries such as the victim sustained, Dr. Hayne opined that the injuries would have occurred from water immersion. Moreover, Dr. Hayne stated that he would reasonably conclude that the child's feet did not come in contact with the bottom of the bathtub, as there were burns on the bottom of the hypothetical child's feet. Dr. Hayne further explained that the bottom surface of the bathtub is cooler than the water; thus, if the feet touched the bottom surface, there would normally not be burning on the feet.
¶ 8. The defense called a plethora of witnesses, each of whom testified as to Williams's relationship with children. Jamie Bullock, Williams's sister, testified that, based on her observations, Williams never gave her the impression that he would harm Shakyla or any other child. Frederick Bullock, Williams's brother-in-law, testified that Williams treated Shakyla as his own child. Earline Lloyd, Williams's aunt, testified that she had observed Williams take care of her grandchildren and that, in her opinion, Williams was not a person that would abuse a child. Shannon Atkins, the mother of Williams's daughter, testified that she believed that Williams loved children. Linda Jackson and Patricia Washington, lifelong acquaintances of Williams, both testified that they allowed Williams to care for their children. Reverend Barry Howard, also a lifelong acquaintance of Williams, testified as to his opinion that Williams had a good reputation in the community and that he would not commit a violent act toward a child. Each of the defense witnesses, including Williams,[2] testified that they had no knowledge of how Shakyla was burned.
*39 ¶ 9. On April 18, 2003, Williams was found guilty of capital murder and was sentenced to life imprisonment without parole. The trial court denied Williams' motion for JNOV or, in the alternative, a new trial. Williams appeals, asserting the following issue for our review:
I. Whether Williams was denied effective assistance of counsel in violation of the Sixth Amendment of the Constitution of the United States and the Constitution of the State of Mississippi.
II. Whether the trial court erred in overruling two motions for a mistrial made by appellant during the state's closing arguments.
III. Whether the trial court erred in allowing purported expert testimony, over the objection of Williams, as to how burns occurred to the victim as this testimony was outside the expertise of the witness.
IV. Whether the trial court erred in refusing to grant Williams' motion for a directed verdict of acquittal at the close of the State's case, in refusing to grant Williams' requested peremptory instruction, and in denying Williams' motion for JNOV, as such verdict was contrary to the law.
V. Whether the trial court erred in denying Williams' motion for a new trial as the verdict was against the overwhelming weight of the evidence.

ISSUES AND ANALYSIS

I. Whether Williams was denied effective assistance of counsel in violation of the Sixth Amendment of the Constitution of the United States and the Constitution of the State of Mississippi.
¶ 10. The standard of review for a claim of ineffective assistance of counsel was set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To bring a successful claim for ineffective assistance of counsel, pursuant to the court's ruling in Strickland, the defendant must prove that his attorney's overall performance was deficient and that this deficiency deprived him of a fair trial. Id. at 689, 104 S.Ct. 2052; Moore v. State, 676 So.2d 244, 246 (Miss.1996) (citing Perkins v. State, 487 So.2d 791, 793 (Miss.1986)). We must be mindful of the "strong rebuttable presumption that an attorney's performance falls within a wide range of reasonable professional assistance and that the decisions made by trial counsel are strategic." Covington v. State, 909 So.2d 160, 162(¶ 4) (Miss.Ct.App.2005) (quoting Stevenson v. State, 798 So.2d 599, 602(¶ 6) (Miss.Ct.App. 2001)). To overcome this presumption, the defendant must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. 2052; Woodson v. State, 845 So.2d 740, 742(¶ 9) (Miss.Ct.App.2003). This Court considers the totality of the circumstances when addressing a claim of ineffective assistance of counsel. Colenburg v. State, 735 So.2d 1099, 1103(¶ 9) (Miss.Ct.App.1999) (citing Carney v. State, 525 So.2d 776, 780 (Miss. 1988)).
*40 ¶ 11. Williams asserts that he received ineffective assistance of counsel because his attorney, Johnnie E. Walls, Jr., failed to adequately investigate his case prior to trial. In support of this assertion, Williams cites Walls's failure to review a disk containing all of the photographs taken by the State's expert witnesses, Dr. Love and Dr. Hayne, despite the fact that the State notified Walls that the photographs were ready for his inspection. Williams also cites Walls's decisions not to call a defense expert witness and not to cross-examine Dr. Hayne as evidence of his failure to investigate. Williams asserts that, "[h]ad Walls obtained the critical discovery held by the State," i.e., the additional photographs, "he would have been able to not only effectively cross-examine both experts and attempt to discredit their testimony, but he also would have been able to present a vigorous and effective defense." Therefore, Williams maintains the outcome of the trial would have been different, but for counsel's errors.
¶ 12. In addressing Williams's claims, we first note that Walls's decisions not to call an expert witness and not to cross-examine Dr. Hayne are presumptively viewed by this Court as strategic and tactical decisions. Regarding Williams's contention that the outcome of the trial would have been different had Walls obtained the additional photographs, the record suggests the contrary. During a discussion in the judge's chambers, the State explained that the only difference between the photographs on the disk and the photographs already in the possession of Walls was that the photographs on the disk "show the condition a little bit better." The State further explained that the photographs given to Walls and the photographs on the disk were taken at the same time, but that the photographs on the disk were "just clearer." Moreover, the court stated that the disk photographs that Walls did not pick-up for review "[depicted] basically the same thing" as the photographs that were given to him. Considering the high degree of similarities between the photographs in question, we fail to see how examining the additional photographs would have enabled Walls to more effectively cross-examine the State's experts to the extent that the outcome of the trial would have been different. Consequently, we find that Williams has failed to overcome the presumption that Walls's performance fell within a wide range of reasonable professional assistance and that his decisions were strategic.
¶ 13. In addition to his assertion that Walls failed to properly investigate, Williams asserts that Walls failed to obtain a hearing on his motion for JNOV or a new trial. The motion for JNOV or a new trial alleged that Williams did not receive a fair trial because "a certain juror(s) was a habitual drunkard or an alcoholic and failed to reveal same to the Court in violation of the law and failed and/or refused to offer information that he, she, or they were close personal friends with the father of the deceased child, Michael Trisby." Williams contends that because Walls failed to obtain a hearing, certain critical information concerning one or more of the jurors was never brought before the court. Williams further asserts that Walls compounded his error by failing to designate the voir dire of the jury panel as part of the record for appeal.
¶ 14. Williams's vague assertion that one or more male or female jurors were habitual drunkards and/or close personal friends of the father of the victim does not present a reasonable probability that the result of the proceeding would have been different had defense counsel obtained a hearing on the motion for JNOV or a new trial. Consequently, considering the totality *41 of the circumstances, we find that Williams has failed to rebut the strong presumption that his attorney's performance was reasonable. This issue is without merit.

II. Whether the trial court erred in overruling two motions for a mistrial made by appellant during the State's closing arguments.
¶ 15. Williams asserts that the trial court erred in overruling two motions for a mistrial made during the State's closing arguments. The first motion for a mistrial was made after the State reminded the jury that the "defense didn't even cross Dr. Hayne." The defense made a second motion for a mistrial after the State made the following comment during closing:
MR. CARLTON: Then they want to criticize [Dr. Love] for not investigating. But he did look into the matter, he did investigate, and he concluded after that point  this is written the day she was put in the hospital. The day he saw her, that's when that statement was made.
But when he looked into it fully and when he sat here and testified, he told you in his concluding remarks that she was held in that water.
¶ 16. The standard of review for denial of motion for mistrial is abuse of discretion. Walton v. State, 806 So.2d 333, 334(¶ 4) (Miss.Ct.App.2002) (citing Gossett v. State, 660 So.2d 1285, 1290-91 (Miss. 1995)). Whether to grant such a motion for a mistrial is within the sound discretion of the trial court. Id. (citing Ladner v. State, 584 So.2d 743, 753 (Miss.1991)). "[W]hen an objection is sustained, and the trial judge admonishes the jury to disregard the statement, this Court will usually find no error, absent unusual circumstances." Id. (quoting Pulphus v. State, 782 So.2d 1220(¶ 10) (Miss.2001)). When the trial court admonishes the jury to disregard a statement, it is presumed that the jury will follow the court's instructions. Sharma v. State, 800 So.2d 1190, 1192 (Miss.Ct.App.2001) (citing Payne v. State, 462 So.2d 902, 904 (Miss.1984)).
¶ 17. In the case at bar, the trial court sustained Williams's objections to both of the State's aforementioned comments. After Williams moved for a mistrial on the first occasion, the trial court instructed the jury to "totally disregard" the State's comment (regarding defense counsel's decision not to cross-examine Dr. Hayne) because "there is no burden of proof on the defendant." The second time Williams moved for a mistrial, the trial court again asked the jury to "totally disregard" the State's assertion that Dr. Love testified that Shakyla was "held in that water." The trial court further explained to the jury that the State's assertion was "not evidence in this case." We find that the trial court adequately instructed the jury to ignore the State's comments. Furthermore, we do not find unusual circumstances sufficient to overcome the presumption that the jury followed the court's instructions to ignore the State's inappropriate comments. Accordingly, this issue is without merit.

III. Whether the trial court erred in allowing purported expert testimony, over the objection of Williams, as to how burns occurred to the victim as this testimony was outside the expertise of the witness.
¶ 18. Whether to admit expert testimony is a decision left to the sound discretion of the trial court. Marbra v. State, 904 So.2d 1169, 1176(¶ 27) (Miss.Ct. App.2004) (citing Puckett v. State, 737 So.2d 322, 342(¶ 57) (Miss.1999)). We will not reverse based on the trial court's admission *42 of expert testimony, unless we conclude that the admission was arbitrary and clearly erroneous, i.e., that the trial court abused its discretion. Id.
¶ 19. Williams contends that the court committed reversible error in allowing Dr. Hayne to testify as to the cause of the victim's burns; he asserts that there was insufficient evidence to support Dr. Hayne's conclusion. Dr. Hayne's conclusion as to the cause of the victim's burns was solicited by the State in the following manner:
Q. As part of being a forensic pathologist, is it also your job to determine how, or the most likelihood, that injuries occurred and death occurred?
A. Yes.
Q. Is that part of what you do?
A. That's part of my job.
Q. All right. During the course of your examination of this body, and based on your expertise, did you formulate an expert opinion, a reasonable medical degree, as to how these burns occurred? And tell us the reasons why, how you think they occurred.
A. I did come to a conclusion.
Q. All right.
A. And the conclusion was it was purposely inflicted with immersion of this child into a water medium, a bathtub, with hot water.
Williams's counsel objected to the preceding testimony of Dr. Hayne, and the following conference at the bench took place out of the hearing of the jury:
MR. WALLS: I object to the doctor testifying about a bathtub. There is no way for him to know that except through hearsay.
MR. CARLTON: Well, we can leave out bathtub.
THE COURT: Well, I mean, that is true. How would he know that from his  well, it is true, how would he know that from just examining the body?
MR. CARLTON: Well, he could have heard it from the coroner.
MR. GORE: I can do it in the form of a hypothetical.
. . . .
THE COURT: Okay. Well, I'm going to strike what he said already, and you can ask him a question.
MR. GORE: In a hypothetical?
THE COURT: Yes.
Williams contends that the line of hypothetical questioning that followed was not hypothetical, but was "a thinly veiled method for the State to put before the jury [Dr. Hayne's] conclusion as to how the injuries were sustained by the victim and that these injuries were the result of an intentional act of the Appellant."
¶ 20. In addressing Williams's claims, we first note that the use of hypothetical questioning in order to elicit expert testimony is permissible in Mississippi. See Williams v. State, 544 So.2d 782, 787 (Miss.1987). Regarding Williams contention that Dr. Hayne should not have been allowed testify as to the cause of the victim's burns, we also note that Williams made no objections to qualifying Dr. Hayne as an expert in the field of forensic pathology, and that it is the duty of a forensic pathologist to answer "two basic questions: what was the cause of death, and what was the manner of death?" Bell v. State, 725 So.2d 836, 854(¶ 51) (Miss. 1998). In Mississippi, a forensic pathologist may testify as to what caused the victim's injuries and what trauma the injuries would produce. McGowen v. State, 859 So.2d 320, 335(¶ 53) (Miss.2003) (citing Holland v. State, 705 So.2d 307, 341 (¶ 129) *43 (Miss.1997)). Moreover, a forensic pathologist's testimony concerning the victim's wounds, suffering, and the means of infliction of injury falls within the bounds of his expertise. Id. (citing Holland, 705 So.2d at 341 (¶ 127)). Consequently, we find that the court did not err in allowing Dr. Hayne to testify as to the cause of Shakyla's injuries. This issue is without merit.

IV. Whether the trial court erred in refusing to grant Williams' motion for a directed verdict of acquittal at the close of the State's case, in refusing to grant Williams' requested peremptory instruction, and in denying Williams' motion for JNOV, as such verdict was contrary to the law.
¶ 21. A motion for directed verdict and JNOV, as well as a request for peremptory instruction, challenges the legal sufficiency of the evidence, "since each requires consideration of the evidence before the court when made." McClain v. State, 625 So.2d 774, 778 (Miss.1993). Reversal on the issue of legal sufficiency can only occur when evidence of one or more of the elements of the charged offense are such that "reasonable and fair-minded jurors could only find the accused not guilty." Purnell v. State, 878 So.2d 124, 129(¶ 14) (Miss.Ct. App.2004) (citing Hawthorne v. State, 835 So.2d 14, 21(¶ 31) (Miss.2003)). However, where substantial evidence of such quality and weight exists to support the verdict, and where reasonable and fair-minded jurors may have found the appellant guilty, we must affirm the judgment of the trial court. McClendon v. State, 852 So.2d 43, 47(¶ 11) (Miss.Ct.App.2002) (citing Baker v. State, 802 So.2d 77, 81(¶ 13) (Miss. 2001)).
¶ 22. Williams asserts that the State's case was based on circumstantial evidence, and that the State's proof failed to establish sufficient evidence to support the verdict. Specifically, he asserts that the State was unable to prove an essential element of the underlying felony of child abuse, i.e., that he intended to burn Shakyla. Citing Steele v. State, 544 So.2d 802, 807-8 (Miss.1989), Williams argues that his conviction cannot be sustained because the State's evidence did not exclude the possibility that Shakyla's injuries were an accident. We disagree.
¶ 23. Dr. Love testified that Shakyla was extensively burned and that most of the burns were third degree. He further testified that his examination revealed extensive burns to Shakyla's feet, legs, buttocks, and lower back, but no burns to her hands, arms, or front torso. Dr. Love also testified that there were no splash marks on Shakyla's body and that her injuries were likely caused by being held in hot water. Dr. Hayne likewise testified that he did not find any evidence of splash burns on Shakyla's body, and that she had extensive full thickness thermal burn injuries on her right and left lower extremities, including the bottoms of her feet. When Dr. Hayne was given a hypothetical with facts identical to this case, i.e., a bathtub filled with hot water and a two-year-old child with injuries such as the victim sustained, he opined that the injuries would have occurred from water immersion. Moreover, Dr. Hayne testified that he would reasonably conclude that the child's feet did not come in contact with the bottom of the bathtub, which would have been cooler than the water, as there were burns on the bottom of the hypothetical child's feet.
¶ 24. Taking the aforementioned evidence into consideration, we find that the State presented substantial evidence that supports the verdict. Both Dr. Love and Dr. Hayne testified that Shakyla did not *44 suffer splash burns and that her injuries were consistent with being held or, immersed, in hot water. Moreover, Dr. Hayne's testimony, that a two-year-old child in a bathtub filled with hot water would not have full-thickness burns on the bottom of her feet if her feet came into contact with the cooler surface of the bottom of the bathtub, reasonably excluded the possibility that Shakyla stepped into the bathtub. Thus, both Dr. Love and Dr. Hayne's conclusions were contrary to Williams's testimony regarding the cause of Shakyla's injuries. Furthermore, Doreatha Williams testified that the victim's burns were stocking burns and that such burns were inconsistent with Williams' version of the events. Consequently, we find that the State's proof was sufficient and that reasonable and fair-minded jurors may have found Williams guilty beyond a reasonable doubt. Therefore, this issue is without merit.

V. Whether the trial court erred in denying Williams' motion for a new trial as the verdict was against the overwhelming weight of the evidence.
¶ 25. A motion for a new trial challenges the weight of the evidence. Beckum v. State, 917 So.2d 808, 812(¶ 10) (Miss.Ct.App.2005) (citing Carr v. State, 774 So.2d 469(¶ 15) (Miss.Ct.App.2000)). "When reviewing a trial court's denial of a motion for a new trial, this Court must consider the evidence in the light most favorable to upholding the verdict." Id. at 813(¶ 14). "We must keep in mind that it is the jury's responsibility to resolve matters regarding the weight of the evidence and the credibility of witnesses." Id. It is a fundamental principle of law that a jury verdict will not be disturbed except in the most extreme of situations. Washington v. State, 800 So.2d 1140, 1144(¶ 10) (Miss. 2001) (citing Manning v. State, 735 So.2d 323, 333(¶ 10) (Miss.1999)). "Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal." Walker v. State, 881 So.2d 820, 831(¶ 32) (Miss.2004) (citing Dudley v. State, 719 So.2d 180, 182(¶ 8) (Miss.1998) (overruled on other grounds)).
¶ 26. Williams argues that "[m]ost of the State's evidence was speculative and based on hypotheticals." He further asserts that the evidence offered against him failed to meet the higher standard of evidence "to the exclusion of every reasonable hypothesis consistent with innocence." After reviewing the evidence in support of Williams's conviction, we cannot say that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. We find that the facts and reasonable inferences drawn from those facts strongly point toward Williams's guilt. Therefore, we decline to disturb the jury verdict in this case. This issue is without merit.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY OF CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES AND ROBERTS, JJ., CONCUR.
NOTES
[1] A "stocking burn" is a type of deliberate immersion burn caused by holding a child's feet in hot water. OFFICE OF JUVENILE JUSTICE AND DELINQUENCY PREVENTION, U.S. DEPARTMENT OF JUSTICE, PORTABLE GUIDE: PORTABLE GUIDES TO INVESTIGATING CHILD ABUSE SERIES, BURN INJURIES IN CHILD ABUSE (June 2001).
[2] Williams testified that he did not know how Shakyla fell into the bathtub or why she did not get out if the water was too hot. Williams also testified that he did not hold the child in the water.