MYERS, P.J., for the Court.
 

 ¶ 1. Mario Brown was convicted of manslaughter in the Coahoma County Circuit Court for a shooting that resulted in Sean Cole’s death. He was sentenced to serve twenty years in the custody of the Mississippi Department of Corrections (MDOC). Brown appeals his conviction and sentence arguing the trial court committed three errors: (1) the trial court erred in allowing the State’s forensic expert to testify about unreliable, inaccurate, and speculative matters; (2) the trial court erred in refusing Brown’s self-defense jury instructions; and (3) the trial court erred in failing to grant Brown’s motion for a new trial or, in the alternative, a judgment notwithstanding the verdict (JNOV). Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶2. On September 8, 2006, a fight occurred outside of Nanny’s Food and Games Café (Café) in Friar’s Point. The altercation began when Clarence Henderson and Corey Dorrough began exchanging words. According to Brown, two more people were with Dorrough during his exchange with Henderson. At some point during this argument, Brown exited the Café, and seeing his friend Henderson in trouble, punched Dorrough. Cole, who was one of the two people with Dorrough, then punched Brown. Brown testified that when he got up from the punch, he began retreating down the street, but Cole, Dorrough, and possibly a third individual began pursuing Brown with beer bottles in their hands. Brown then pulled his pistol to “intimidate” the group into stopping their pursuit; everyone stopped but Cole. Brown testified that he and Cole then began to fight. Brown testified that he attempted to hit Cole with his pistol, and that Cole attempted to take the pistol from Brown. During the scuffle, the pistol discharged three times. After the pistol fired, Cole ran back toward the Café and around to its side, and according to Brown, Cole did not appear to be shot. Brown ran to the other side of the Café. Brown testified that, while standing on the side of the Café, he saw someone running toward him and he fired his pistol three to five times at this person. Brown then fled the scene with Henderson, who dropped him off at an acquaintance’s house. Brown testified that he then learned Cole had died; Brown threw his pistol into a sewage lagoon.
 
 [1]
 
 Brown turned himself in to police the next morning.
 

 ¶ 3. Brown and Henderson provided statements to the Mississippi Bureau of Investigation about the events that oc
 
 *1137
 
 curred. Brown stated in part: “me and [Cole] were scuffling and I tried to hit him with the gun. The gun went off. The gun went off a few more times.... I saw someone running. I thought it was [Cole] and I shot toward him. I think I shot three times.” Henderson’s statement provided in part that: “[Brown] started shooting. He was shooting wild.... The gun went off several times. It looked like [Brown] was shooting [Cole].... [Brown] walked down the street beside the building, then was looking to where [Dorrough] ran to. I heard four or five more shots.”
 
 [2]
 

 ¶ 4. A Coahoma County grand jury subsequently indicted Brown for murder. At trial, Steve Chancellor, a crime scene analyst with the Mississippi Bureau of Investigation, testified that he recovered two groups of shell casings from the scene. A group of three shell casings were recovered in front of the Café, and a group of four shell casings were recovered on the side of the Café. All the shell casings were fired from a nine-millimeter pistol. Starks Hathcock, a forensic scientist with the Mississippi Crime Laboratory, testified that all of the shell casings recovered at the Café were fired from the same weapon. However, he could not determine if the projectile recovered from Cole was fired from the same weapon as the shell casings recovered. He testified that it would be virtually impossible to match the casing and the projectiles without the weapon.
 

 ¶ 5. Dr. Steven Hayne performed the autopsy on Cole and was admitted at trial as an expert in forensic pathology. He testified that Cole received three gunshot wounds: a bullet graze to the left side of the abdomen, a wound to the upper right chest, and a wound to his abdomen. He concluded that Cole suffered massive blood loss, which substantially contributed his death.
 

 ¶ 6. At the conclusion of Brown’s trial, the jury found him guilty of manslaughter. The trial court sentenced Brown to serve twenty years in the custody of the MDOC. Brown filed a motion for a new trial or, in the alternative, for a JNOV, which was denied by the trial court. Aggrieved, Brown appeals his conviction and sentence.
 

 DISCUSSION
 

 I. WHETHER THE TRIAL COURT ERRED IN ALLOWING PORTIONS OF DR. HAYNE’S TESTIMONY.
 

 ¶ 7. Brown alleges that the trial court permitted Dr. Hayne to testify about matters that were unreliable, inaccurate, and speculative. On direct examination, the prosecution asked Dr. Hayne how Cole was positioned when he was shot. Dr. Hayne stated that given the entry point and trajectory of the bullets, Cole was likely ducking and then leaning away when he was shot in the chest and abdomen, respectively. The prosecution then asked Dr. Hayne how far a person could run with the type of injuries Cole received. He responded that a person could run one hundred to two hundred yards before collapsing.
 

 ¶ 8. As the State correctly points out, Brown never objected to these statements made by Dr. Hayne. The “[supreme court] has consistently held that the failure to make a contemporaneous objection constitutes waiver of an issue on appeal.”
 
 Derouen v. State,
 
 994 So.2d 748, 751(¶ 7) (Miss.2008). “The trial court will not be held in error on a matter that was never presented for its consideration.”
 
 Bogan v. State,
 
 754 So.2d 1289, 1294(¶ 19)
 
 *1138
 
 (Miss.Ct.App.2000). Having failed to object to the expert testimony, we find that Brown is procedurally barred from raising this issue on appeal.
 

 ¶ 9. Notwithstanding the procedural bar, we find the trial court did not err in allowing Dr. Hayne’s testimony. “A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence,” and “reversal is only proper when such a discretion has been abused and a substantial right of a party has been affected.”
 
 Flaggs v. State,
 
 999 So.2d 393, 401(¶26) (Miss.Ct.App.2008). “However, this discretion must be exercised within the confines of the Mississippi Rules of Evidence.”
 
 Id.
 

 ¶ 10. “The admissibility of expert testimony is evaluated in light of M.R.E. 702, which holds that such testimony may be introduced when it is found to be relevant and reliable.”
 
 Id.
 
 at (¶ 27) (citation omitted). We have stated that such testimony is relevant if it assists the trier of fact in understanding or determining a fact at issue;
 
 Flaggs
 
 noted:
 

 To meet the requirement of reliability, an expert’s testimony must be based on the methods and procedures of science, and not merely on subjective beliefs or unsupported speculation. Rule 702 expressly allows expert testimony regarding non-scientific matters, so long as the witness’s knowledge, skill, experience, training, or education qualify him as an expert in a given field, and (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the ease.
 

 Id.
 
 at 401-02(¶27) (internal citation and quotations omitted).
 

 ¶ 11. Dr. Hayne was admitted as an expert witness in forensic pathology without any objection by Brown. “[I]t is the duty of a forensic pathologist to answer two basic questions: what was the cause of death, and what was the manner of death?”
 
 Williams v. State,
 
 937 So.2d 35, 42(¶ 20) (Miss.Ct.App.2006) (citation omitted). “[A] forensic pathologist may testify as to what caused the victim’s injuries and what trauma the injuries would produce.”
 
 Id.
 
 (citation omitted). A forensic pathologist may also testify concerning “the victim’s wounds, suffering, and the means of infliction if the injury falls within the bounds of his expertise.”
 
 Id.
 
 at 43(¶ 20) (citation omitted).
 

 ¶ 12. As stated above, Dr. Hayne testified that Cole was likely ducking and then leaning away when he was shot. In
 
 Bell v. State,
 
 725 So.2d 836, 853(¶ 50) (Miss.1998), the supreme court concluded that under Rule 702, an expert in forensic pathology could testify about the position of the victim at the time the fatal wounds were received. The Mississippi appellate courts have continued to allow an expert in forensic pathology to testify about the position of the victim’s body when he or she was shot.
 
 See Boyd v. State,
 
 977 So.2d 329, 333 (¶¶ 8, 31) (Miss.2008) (victim was in a standing position when shot);
 
 Turner v. State,
 
 796 So.2d 998, 1001(¶ 8) (Miss.2001) (victim was down, “essentially on the ground,” and “leaning forward” when the shooting occurred);
 
 Conway v. State,
 
 915 So.2d 521, 526(¶ 21) (Miss.Ct.App.2005) (victim was in a seated and upright position when shot).
 

 ¶ 13. It is clear from the above cases that, under Rule 702, an expert qualified in forensic pathology can testify about the position of the victim at the time the fatal wounds were inflicted. Therefore, it was not error for the trial court to allow Dr. Hayne, who was tendered as an expert
 
 *1139
 
 in forensic pathology, to testify about the position of Cole when he was shot.
 

 ¶ 14. Brown also argues that the trial court erred in allowing Dr. Hayne to testify about the distance a person could run after suffering the type injuries Cole received. Dr. Hayne responded that “a person could possibly run the distance of ... 100 yards or even 200 yards with a gunshot wound to the heart, a gunshot wound of this caliber to the heart.” Brown also failed to object to this assessment; therefore, he is procedurally barred from raising this issue on appeal.
 
 Bogan,
 
 754 So.2d at 1294(¶ 19). Notwithstanding the procedural bar, we will consider his argument that it was erroneous for the trial court to permit such testimony.
 

 ¶ 15. “[W]e first note that the use of hypothetical questioning in order to elicit expert testimony is permissible in Mississippi.”
 
 Williams,
 
 937 So.2d at 42(¶ 20). Moreover, as stated above, a forensic pathologist may testify about the trauma an injury can produce, about the victim’s wounds, and about the victim’s suffering.
 
 Id.
 
 Our courts have permitted a forensic pathologist to testify about the pain and suffering a victim suffered after being attacked because it was a result of the trauma produced by the incident.
 
 See Holland v. State,
 
 705 So.2d 307, 341 (¶ 128) (Miss.1997) (“victim suffered a fatal heart attack as a result of trauma and stress induced by a beating and robbery”);
 
 Booker v. State,
 
 5 So.3d 411, 423(¶ 32) (Miss.Ct.App.2008) (victim became unconscious sometime before his death, but during the infliction of the injuries, the victim was “very much aware of what was going on, and in great pain.”).
 

 ¶ 16. We find the response given by Dr. Hayne was a description of the type pain, trauma, and suffering Cole could have experienced after being shot; thus, it was admissible. His testimony revealed that, hypothetically, Cole could have been shot during the scuffle and still would have been capable of running back to the side of the Café.
 
 [3]
 
 Dr. Hayne’s testimony also provided insight into the types of wounds Cole received and how much pain and suffering he would have experienced after being shot and while he was running to the side of the Café. Dr. Hayne’s testimony established that Cole’s death would not have been instantaneous, but Cole would have lived a few moments before dying.
 

 ¶ 17. We find that the trial court did not abuse its discretion in allowing Dr. Hayne’s testimony as Dr. Hayne’s testimony about the position Cole was in when he was shot and how far Cole could have run after being shot were within the scope of his expertise as an expert in forensic pathology. Accordingly, this issue is without merit.
 

 II. WHETHER THE TRIAL COURT ERRED IN REFUSING BROWN’S SELF-DEFENSE JURY INSTRUCTIONS.
 

 ¶ 18. Brown requested that the trial court grant three self-defense jury instructions. Brown argues there was sufficient evidence to support a self-defense jury instruction; Brown was attacked by Cole and two other individuals, retreated from their attack, and was pursued by Cole who was carrying a beer bottle, at which point Brown pulled his pistol in hopes of thwarting their pursuit and then engaged in a scuffle with Cole, which led to the pistol firing three times. However, the trial court refused Brown’s self-defense jury instruction on the ground that it had no evidentiary basis.
 

 
 *1140
 
 ¶ 19. Our standard of review of the giving or refusal of a jury instruction is well established:
 

 Jury instructions are to be read together and taken as a whole with no one instruction taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.
 

 Hearn v. State,
 
 3 So.3d 722, 738(¶ 45) (Miss.2008) (citations omitted).
 

 ¶ 20. In
 
 Burnside v. State,
 
 882 So.2d 212, 216(¶ 21) (Miss.2004), the supreme court ruled that there was insufficient evidence to support a self-defense jury instruction on a charge for simple assault on a sheriffs deputy where the defendant denied hitting or striking the deputy. Similarly, in
 
 Dorrough v. State,
 
 812 So.2d 1077, 1081(¶ 19) (Miss.Ct.App.2001), this Court ruled that the defendant was not entitled to a self-defense jury instruction when he denied having a weapon and inflicting injury on an aggravated assault charge.
 

 ¶ 21. Turning to the case at bar, Brown denied the shooting. Brown’s defense was not one of self-defense; rather, it was that someone else shot Cole. Brown testified that he did not know who pulled the trigger during the scuffle with Cole when the pistol was fired three times. He testified on direct examination that he did not do the second shooting. The trial court was somewhat perplexed by Brown’s self-defense jury instruction request. During the jury instruction conference, the trial court asked Brown’s counsel, “Is the defendant saying that he did it, he killed the victim!,] but he killed the victim in self-defense?” Brown’s counsel responded:
 
 “If
 
 I recall, when asked that question on cross[-examination] ... his response was that he really don’t [sic] know.” The trial court again asked Brown’s counsel whether Brown wanted to be heard regarding the self-defense jury instruction. To which, Brown’s counsel answered, “no,” and withdrew his self-defense instruction request. Brown cannot claim on appeal that the trial court erred when he did not allow the trial court to rule on whether to grant or refuse the jury instruction.
 
 Austin v. State,
 
 971 So.2d 1286, 1288(¶ 8) (Miss.Ct.App.2008).
 

 ¶ 22. Procedural bar notwithstanding, we find that Brown’s argument on appeal that he was entitled to self-defense instruction because an evidentiary basis existed which showed that even if he did the killing, it was done in necessary self-defense, fails. Our supreme court has upheld the trial court’s denial of a self-defense jury instruction in a murder case as having no evidentiary basis when the defendant’s defense was that the shooting was unintentional and accidental.
 
 Wadford v. State,
 
 385 So.2d 951, 955 (Miss. 1980). The supreme court clarified that “[t]he legal concept of self-defense in a homicide case is based upon justification of a purposeful killing because it was necessary to kill in order to save the killer from imminent danger of suffering death or grave bodily harm at the hands of the person killed”
 
 Id.
 
 Similar to the defendant in
 
 Wadford,
 
 Brown never admitted that he shot Cole in a purposeful manner, thus precluding him from being entitled to a self-defense jury instruction.
 

 ¶ 23. Accordingly, the trial court did not err in refusing to grant Brown’s self-defense jury instruction for a lack of an evidentiary basis. This issue is without merit.
 

 III. WHETHER THE TRIAL COURT ERRED IN DENYING
 
 *1141
 
 BROWN’S MOTION FOR A NEW TRIAL OR, IN THE ALTERNATIVE, FOR A JNOV.
 

 ¶ 24. Brown argues the trial court erred in not granting his motion for a new trial or, in the alternative, for a JNOV because the State failed to prove the necessary elements of manslaughter. In appealing the trial court’s decision to overrule his motion for a new trial, Brown challenges the weight of the evidence, and by appealing its decision to overrule his motion for a JNOV, Brown challenges the legal sufficiency of the evidence.
 
 Dear v. State,
 
 960 So.2d 542, 545-46 (¶¶ 13-14) (Miss.Ct.App.2006). We will address each of Brown’s contentions separately.
 

 A. Weight of the Evidence
 

 ¶ 25. In
 
 Bush v. State,
 
 895 So.2d 836, 844(¶ 18) (Miss.2005) (internal citations omitted), the supreme court outlined our standard of review of the weight of the evidence supporting a jury’s verdict as follows:
 

 When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.... However, the evidence should be weighed in the light most favorable to the verdict. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Rather, as the “thirteenth juror,” the court simply disagrees with the jury’s resolution of the conflicting testimony. This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. Instead, the proper remedy is to grant a new trial.
 

 ¶ 26. Brown bases his argument on the absence of proof that he shot Cole. Brown argues that no evidence proved that he shot Cole, but there is evidence that someone else fired the fatal shot at Cole. Brown points to his and Henderson’s version of the events to support his argument. Both of them stated that: Brown was involved in a scuffle with Cole; the gun fired three times during this scuffle; Cole was not bleeding when he ran off from the scuffle with Brown; and Brown did not fire the second round of shots. To support his argument, Brown cites to the rule enunciated in
 
 Weathersby v. State,
 
 165 Miss. 207, 209, 147 So. 481, 482 (1933), which held that: “where the defendant or the defendant’s witnesses are the only eyewitness to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particularly by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge.” Brown argues that because the State did not present any witnesses to rebut his and Henderson’s account of what happened, their version of the events must be accepted as the truth.
 

 ¶ 27. However, the State correctly points out that Brown is procedurally barred from bringing his
 
 Weathersby
 
 argument because he did not bring it to the trial court’s attention and give the trial court the opportunity to make a ruling.
 
 Neese v. State,
 
 993 So.2d 837, 843(¶ 12) (Miss.Ct.App.2008).
 

 ¶ 28. Additionally, weighing the evidence in a light most favorable to the verdict, we find the evidence supports Brown’s manslaughter conviction. While Brown and Henderson did provide alternative theories at trial of what occurred that night, their statements, when read aloud in
 
 *1142
 
 open court, coupled with their testimonies, established that Brown’s gun went off three times while he and Cole were in a scuffle, and after Cole ran around the side of the Café, Brown went to the opposite side of the Café and fired three to five more shots in the direction of Cole. In fact, Henderson testified on direct examination that Brown was standing in the road when the second round of shots were fired, but on cross-examination, Henderson, admitted that he was distracted and not watching Brown the entire time after the scuffle. The State’s specialist in firearms identification testified that all the casings recovered by the Mississippi Bureau of Investigations from the scene were fired from the same weapon. Since no other type of casings were recovered at the scene, it is only logical to conclude that the shots that killed Cole were some of the six to eight shots fired by Brown. Therefore, we find that the weight of the evidence supports Brown’s manslaughter conviction.
 

 B. Legal Sufficiency of the Evidence
 

 ¶ 29. In
 
 Bush v. State,
 
 895 So.2d at 843 (¶ 16), the supreme court also reiterated our standard of review as to the legal sufficiency of the evidence as follows:
 

 In
 
 Carr v. State,
 
 208 So.2d 886, 889 (Miss.1968), we stated that in considering whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows “beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.” However, this inquiry does not require a court to “ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.” Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
 

 Jackson v. Virginia,
 
 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (citations omitted) (emphasis in original). Should the facts and inferences considered in a challenge to the sufficiency of the evidence “point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty,” the proper remedy is for the appellate court to reverse and render[, i.e. reverse and discharge].
 
 Edwards v. State,
 
 469 So.2d 68, 70 (Miss.1985) (citing
 
 May v. State,
 
 460 So.2d 778, 781 (Miss.1984));
 
 see also Dycus v. State,
 
 875 So.2d 140, 164 (Miss.2004). However, if a review of the evidence reveals that it is of such quality and weight that, “having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense,” the evidence will be deemed to have been sufficient.
 
 Edwards,
 
 469 So.2d at 70;
 
 see also Gibby v. State,
 
 744 So.2d 244, 245 (Miss.1999).
 

 ¶ 30. Similar to his argument above, Brown argues the State’s evidence did not prove that he killed Cole, thus failing to meet the essential element of manslaughter that he killed another human being.
 

 ¶ 31. As stated above, there is sufficient evidence to sustain a manslaughter conviction. Brown fired three shots while scuffling with Cole and fired three to five more
 
 *1143
 
 shots in the direction of Cole while standing on the side of the Café. The State’s firearm’s specialist testified that only one gun was fired that night at the Café. One of these six to eight shots resulted in the death of Cole. In viewing the evidence in the light most favorable to the State, we find that the evidence presented at trial was sufficient to uphold Brown manslaughter conviction. Accordingly, this issue is without merit.
 

 ¶ 32. THE JUDGMENT OF THE COAHOMA COUNTY CIRCUIT COURT OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COAHOMA COUNTY.
 

 KING, C.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. LEE, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.
 

 [1]
 

 . Brown's pistol was never recovered by the police.
 

 [2]
 

 . Brown and Henderson both testified that the statements they made to the police were inaccurate. Brown stated his statement omit-led portions he related to the police. Henderson testified he lied to police in his statement to get himself out of trouble.
 

 [3]
 

 . The prosecution did not tailor the question specifically to the victim, Cole; the prosecution phrased it as "a person ... receiving! these injuries.”