# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-KA-00520-SCT

*REBECCA LYNN JONES a.k.a. REBECCA*
*JONES a.k.a. REBECCA L. JONES*

*v.*

*STATE OF MISSISSIPPI*

DATE OF JUDGMENT: 02/22/2013
TRIAL JUDGE: HON. JAMES SETH ANDREW POUNDS
COURT FROM WHICH APPEALED: PRENTISS COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT: RICHARD SHANE McLAUGHLIN
NICOLE H. McLAUGHLIN
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL
BY: LAURA HOGAN TEDDER
DISTRICT ATTORNEY: TRENT KELLY
NATURE OF THE CASE: CRIMINAL - FELONY
DISPOSITION: AFFIRMED - 11/13/2014
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE DICKINSON, P.J., PIERCE AND COLEMAN, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1. The Circuit Court of Prentiss County convicted Rebecca Lynn Jones for the murder

of her mother and sentenced her to life imprisonment. On appeal, she asserts that the trial

court erred in admitting evidence of her prior drug use, that the trial court erred in denying

her motions for judgment as a matter of law, and that the verdict is against the weight and

sufficiency of the evidence. Finding no error, we affirm.

**Facts and Procedural History**

¶2.   Rebecca Lynn Jones is the daughter of the decedent, Jane Jones. Rebecca visited Jane in May 2010. An altercation ensued, ending in Jane's death via two gunshot wounds. A grand jury indicted Rebecca for the murder of her mother. Her defense was that Jane saw the gun Rebecca kept in her purse and lunged for it, the two fought over the gun, and it accidentally discharged twice during the struggle.

¶3.   Numerous witnesses testified that Rebecca and Jane had always had a tumultuous relationship and argued often. The family members and friends who testified knew that Rebecca had suffered from drug and alcohol addiction earlier in her life. In November 1989, Rebecca deeded some land to Jane that her father had left her in his will. The State alleges that the transfer took place because of Rebecca's drug problems. Rebecca claims instead that the transfer was in part because of her drug addiction, and in part because she was unable to pay taxes on the property. According to Rebecca, Jane agreed that she would deed the land back to Rebecca eventually.

¶4.   In 2003, Jane filed a Petition for Custody of Rebecca's daughter, Brooke. Brooke's father, Rebecca's ex-husband, joined the petition. The State claims that Jane filed for custody due to Rebecca's drug addiction. Rebecca testified that she had a nervous breakdown and had "lost [her] health," so she did not oppose the change of custody. Brooke lived with Jane for about four years. She moved out after she got pregnant and had an altercation with Jane. Brooke testified that when she was pregnant, Jane had once "pushed [her] to the ground and kicked [her] in [her] stomach, told [her] that she didn't care if the baby lived or died."

¶5.     At the time of Jane's death, Rebecca had participated in recovery programs and had ceased recreational use of drugs and alcohol.  Rebecca, her husband, Brooke, and two uncles testified that Rebecca was living a sober life in Alabama, away from Jane.  There was no evidence that Rebecca had been using drugs or alcohol on the date of Jane's death.  The mental competency evaluation prior to trial stated that both her cocaine and alcohol dependancies were "in full remission."

¶6.     Rebecca testified that, on the date of the shooting, she left her home in Alabama and traveled to Booneville, Mississippi, to visit friends and family.  She had heard from friends and relatives that Jane planned to sell the land Rebecca had deeded to her, along with Jane's own house and land.  Rebecca testified that she was concerned because her mother "worshiped that house," and she had lived there forty years and never mentioned selling.  Rebecca also had heard that Jane had been "acting erratic."  Rebecca said that she decided to go to Jane's house to check on her mother and to "get some stuff off her chest."

¶7.     Only Rebecca and Jane were inside the house when the shooting occurred, and Rebecca and the State sharply disagree as to the course of events.  The State maintains that Rebecca went to Jane's home with the pre-designed purpose of killing her because Jane was planning to sell the land that Rebecca had deeded to her in 1989, and because Rebecca was still angry with her mother over the 2003 custody transfer.  The State claimed that both events – the land transfer and the custody transfer – resulted from Rebecca's past drug use.  Rebecca testified that Jane saw her lift her pistol out of her purse to retrieve her keys from underneath it and Jane lunged for it, saying, "give me that damn gun."  Rebecca claims that, in the ensuing struggle, the gun discharged twice and both bullets hit Jane.  Rebecca testified

that Jane let go of the gun after the second shot, and Rebecca threw the gun on the couch. Jane called 911 and reported that Rebecca had shot her. Rebecca fled the house but quickly turned around and returned. She did not call 911 or try to administer first aid to her mother.

¶8. The first officer on the scene, Tammy Johnson, found Rebecca talking on her cell phone in the driveway and placed her in custody. Johnson said Rebecca's hair and clothing were neat. Johnson did not observe any abrasions on Rebecca or any blood on her clothes. Rebecca said there had been an argument and a struggle and a gun went off; Rebecca was not crying or upset. When Johnson entered the house, nothing was out of place; she did not see any furniture or other items knocked over. The gun was on the couch, and the hammer was "cocked and ready to fire." Jane was still alive when Johnson arrived, and she told Johnson there had been an argument. Jane was not wearing a shirt; her shirt was lying on the floor beside her. Jane had been shot twice – one bullet passed through her torso below her navel and the other bullet passed through her upper chest and upper arm at a sharp diagonal. Jane later died of her wounds.

¶9. The Mississippi Crime Laboratory found particles of gunshot residue on Rebecca's right palm and the back of her left hand, and particles indicative of gunshot residue on both palms and the back of her left hand. The lab found particles indicative of gunshot residue on both sides of both of Jane's hands. The gun was not tested for fingerprints. At trial, the Mississippi Crime Laboratory firearms examiner, Felicia Robinson, testified as to the range of tests she had performed with the pistol. Robinson said that the muzzle-to-garment distance determination test indicated that the distance between the pistol and Jane's shirt had been "greater than contact but less than nine inches."

4

¶10. Robinson explained that Rebecca's pistol could be fired as single or double action. Single action requires the shooter to cock the hammer and then pull the trigger, which releases the hammer while firing. Double action is when the shooter only pulls the trigger, requiring the gun itself to cock the hammer and then release when the shooter pulls the trigger. Rebecca's pistol requires more than five pounds of pressure to fire in single action and between fifteen and seventeen pounds of pressure to fire in double action. Robinson said that, unlike a semiautomatic, Rebecca's pistol does not automatically cock its hammer – the hammer must be cocked manually. Her tests indicated that the pistol functioned properly.

¶11. Dr. Amy McMaster, a forensic pathologist, examined Jane's body. Dr. McMaster testified that there was no stippling around any of Jane's wounds. Stippling results from gun powder when a gun is shot at close range. Stippling would not be present if the gun was fired from several feet away or if something was between the skin and gun, such as clothing, which would prevent the gun powder from being deposited on the victim's skin. Dr. McMaster testified that, if Jane was not wearing a shirt when she was shot, then the gun was shot from more than a couple of feet away from the victim. Robinson had testified that there was a hole in the shirt that had been found beside Jane, and the shirt had gunshot residue on it. However, it is not clear whether the shirt would have covered Jane's neck or arm, and there was no stippling around those wounds either.

¶12. Rebecca's uncle, Jimmy Hicks, was one of the witnesses who testified about Rebecca and Jane's relationship. He said they had "always had kind of a rocky relationship." Hicks testified that he visited Rebecca in jail and she said, "I killed my mother." He testified that Rebecca did not say it was an accident or that there had been a struggle; she did not show any

remorse. Hicks also testified that Rebecca said, "She took my child, she took my land, and now she's taken my freedom." When questioned about her comments to Hicks, Rebecca said it had been a "miscommunication." Rebecca testified that she did not say she killed her mother, but that she told Hicks she "felt guilty because it was [her] gun."

¶13. Rebecca filed several motions *in limine* before trial, one of which sought to exclude references to her previous drug use on the grounds that such references would prevent her from receiving a fair trial. The trial court denied all of Rebecca's motions. A jury found Rebecca guilty of deliberate design murder, and the trial court sentenced her to life imprisonment. Rebecca moved for judgment notwithstanding the verdict (JNOV) or, in the alternative, for a new trial, which the trial court denied. Rebecca appealed.

**Discussion**

¶14. Rebecca asserts four grounds for reversal of her conviction: (1) the court erred in denying her motions for judgment as a matter of law; (2) the trial court erred in allowing evidence of her prior drug use under Mississippi Rule of Evidence 404(b); (3) even if her unrelated drug use was relevant and admissible under Rule 404(b), the evidence should have been excluded under Rule 403; and (4) the verdict was against the overwhelming weight and sufficiency of the evidence. Each issue is either procedurally barred or without merit.

> **I. Whether the trial court erred in denying Rebecca's motions for directed verdict.**

¶15. The denial of a motion for a directed verdict is reviewed *de novo*. *Gilmer v. State*, 955 So. 2d 829, 833 (¶ 5) (Miss. 2007). Rebecca bases her claim that the trial court erred in denying her motion for a directed verdict on the *Weathersby* rule. *See Weathersby v. State*,

6

147 So. 481, 482 (Miss. 1933). Rebecca made two motions for a directed verdict: one at the close of the State's case and one at the close of the defense's case. Neither motion referenced the *Weathersby* rule. Nor was the issue raised in her post-trial motion for JNOV. Because Rebecca did not raise the *Weathersby* rule at trial, the issue is procedurally barred on appeal. *See Page v. State*, 64 So. 3d 482, 489 (¶ 29) (Miss. 2011) (where defendant did not raise *Weathersby* rule as a defense at trial, the Court held he was procedurally barred from raising it on appeal). *See also Brown v. State*, 33 So. 3d 1134, 1141 (¶ 27) (Miss. Ct. App. 2009) (defendant procedurally barred from bringing *Weathersby* argument "because he did not bring it to the trial court's attention and give the trial court the opportunity to make a ruling").

¶16. Despite the procedural bar, we hold that the *Weathersby* rule is inapplicable. The *Weathersby* rule states:

> Where the defendant or the defendant's witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge.

*Weathersby*, 147 So. at 482. Rebecca argues that, because she and Jane were the only eyewitnesses to the incident and because the State did not contradict her version of events "in material particulars," the *Weathersby* rule applies and the Court should reverse her conviction and render a verdict of acquittal. The State responds that the evidence presented at trial did, in fact, substantially contradict Rebecca's version of the incident and that the trial court correctly denied the motion.

7

¶17.	*Weathersby* does not automatically apply when the defendant is the only eyewitness. Rather, the Court has held that *Weathersby* "has no application where the defendant's version is patently unreasonable, or contradicted by physical facts." *Blanks v. State*, 547 So. 2d 29, 33 (Miss. 1989). "Where the defendant is the only eyewitness to a slaying, his version must be reasonable and credible before he is entitled to an acquittal under the rule." *Id.*

> This Court has stated that, "*Weathersby* . . . is nothing more than a particularized version of our general standards according to which courts must decide whether in a criminal prosecution the accused is entitled to a judgment of acquittal as a matter of law." *Johnson v. State*, 987 So. 2d 420, 425 (Miss. 2008) (quoting *Jackson v. State*, 551 So. 2d 132, 136 (Miss. 1989)). "When considering a motion for directed verdict, all evidence introduced by the State must be accepted as true, together with all reasonable inferences therefrom. If there is sufficient evidence to support a guilty verdict, the motion for directed verdict must be overruled." *Green v. State*, 631 So. 2d 167, 175 (Miss. 1994) (internal citations omitted).

*McQuarters v. State*, 45 So. 3d 643, 650 (¶ 19) (Miss. 2010). The State presented adequate evidence – through testimony about Rebecca and Jane's tumultuous relationship, testimony about the crime scene, forensic and ballistic testimony and evidence, and physical facts – to contradict Rebecca's story and present another plausible version of events that differs "in material particulars" from Rebecca's version. Therefore, the issue is procedurally barred and without merit.

### II. Whether the trial court erred in admitting evidence of Rebecca's past drug use.

¶18.	Rebecca argues that evidence of her prior drug use was improperly admitted in violation of Rules 404(b) and 403 of the Mississippi Rules of Evidence. She filed a motion *in limine* seeking to exclude the evidence, but the trial judge denied the motion when the State argued that it needed to admit the evidence to prove motive, to prove lack of mistake,

8

and to tell the jury a rational story. Admissibility of evidence is reviewed for abuse of discretion. "A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, the Court will not reverse this ruling." *Welde v. State*, 3 So. 3d 113, 116 (¶ 13) (Miss. 2009) (quoting *Fisher v. State*, 690 So. 2d 268, 274 (Miss. 1996)).

¶19.    As a general rule, evidence of crimes or acts other than the one for which the defendant is accused is not admissible, but Rule 404(b) provides exceptions to the general rule. *Welde*, 3 So. 3d at 117 (¶ 14) (citing *Ballenger v. State*, 667 So. 2d 1242, 1256 (Miss. 1995)).

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Miss. R. Evid. 404(b). If the evidence is admissible under an exception in Rule 404(b), the trial court must still subject that evidence to a probative value versus prejudicial effect analysis under Rule 403. *Welde*, 3 So. 3d at 117 (¶ 15). Thus, "[t]he evidence offered must (1) be relevant to prove a material issue other than the defendant's character; and (2) the probative value of the evidence must outweigh the prejudicial effect." *Id.* (quoting *Crawford v. State*, 754 So. 2d 1211, 1220 (Miss. 2000)).

¶20.    At the hearing on her motion *in limine*, Rebecca argued that evidence of her prior drug use and subsequent treatment should be excluded because she had been sober for years, there was no evidence that she had been under the influence of drugs or alcohol on the day of the shooting, and there was a risk of the jury inferring that she was "some drug-crazed lunatic."

She maintained that to tie her drug use to the loss of her land and the custody transfer of her daughter and then relate it to Jane's death would be "improper and very tangential." The State responded that it did not intend to discuss Rebecca's stints in rehabilitation or her particular drug use. Rather, the State would use the evidence to prove motive, lack of mistake, and to tell the complete story of the crime. The State's theory was that Rebecca's prior drug use resulted in her losing custody and having to give up her land. Without being able to discuss that, the State argued that "it won't tie into the jury why mother has [the] land and why the daughter is so upset." The trial judge held that evidence of Rebecca's prior drug use would be admissible "to show motive and lack of mistake under Rule 404." While evidence of other crimes or acts may be admissible to show motive and lack of mistake under Rule 404(b), that evidence must be evaluated under the Rule 403 balancing test.

¶21. According to Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Miss. R. Evid. 403. Rebecca maintains that the evidence of her prior drug use had minimal-to-no probative value and was outweighed by a "vast potential for unfair prejudice." She claims it painted her as an "unreliable drug addict" and forced her to testify to clear her name. The State responds that the evidence of Rebecca's prior drug use was properly admitted and did not prejudice her case because it did not involve similar crimes, which would make the jury likely to find her guilty because she had committed the same crime before.

¶22. In ruling on the motion *in limine*, the trial court did not mention Rule 403, the balancing test, or any risk of unfair prejudice. However, the Court has held that, even where a trial judge "failed to use the 'the magic words' that he did not find the danger of unfair prejudice to substantially outweigh the probative value," that determination can be considered implicit if the court heard arguments from each side regarding the potential prejudicial nature of the evidence. *Hoops v. State*, 681 So. 2d 521, 531 (Miss. 1996). *See also Hudson v. State*, 977 So. 2d 344, 349 (¶ 25) (Miss. Ct. App. 2007) (citing *Hoops*, the court held that the trial judge's "implicit Rule 403 balancing test was sufficient"); *Dao v. State*, 984 So. 2d 352, 361 (¶¶ 32-34) (Miss. Ct. App. 2007) (based on *Hoops*, the trial judge's implicit Rule 403 determination was sufficient). In the instant case, the record shows that the trial court heard each side's arguments regarding the admissibility of the evidence and its possible prejudicial effect before making a decision. We hold that the trial court's implicit balancing test was sufficient, and we cannot say that the trial judge abused his discretion in admitting the evidence.

### III. Whether the verdict is contrary to the weight and sufficiency of the evidence.

¶23. After the jury returned a unanimous guilty verdict, Rebecca filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. The trial judge denied the motion. Rebecca alleges that the trial court wrongfully denied her motion because the verdict was against the overwhelming weight and sufficiency of the evidence. The Court reviews post-trial motions for abuse of discretion. *Withers v. State*, 907 So. 2d 342, 352 (¶ 31) (Miss. 2005) (quoting *Flowers v. State*, 601 So. 2d 828, 833 (Miss. 1992)).

11

¶24. A motion for judgment notwithstanding the verdict challenges the sufficiency of the evidence; a motion for a new trial challenges the weight of the evidence. *Bush v. State*, 895 So. 2d 836, 843-44 (¶ 16, 18) (Miss. 2005). In examining a challenge to the sufficiency of the evidence, the Court must ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 843 (¶ 16) (quoting *Jackson v. Virginia*, 433 U.S. 307, 315 (1979)). When reviewing a challenge to the weight of the evidence, the Court will disturb a jury verdict only "when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush*, 895 So. 2d at 843 (¶ 18).

¶25. Rebecca was indicted for deliberate design murder under Mississippi Code Section 97-3-19, which provides, in pertinent part: "The killing of a human being without the authority of law by any means or in any manner shall be murder . . . [w]hen done with deliberate design to effect the death of the person killed[.]" Miss. Code Ann. § 97-3-19(1)(a) (Rev. 2014). To prove deliberate design murder, the prosecution must prove the following elements beyond a reasonable doubt: "(1) the defendant killed the victim; (2) without authority of law; and (3) with deliberate design to effect his death." *Brown v. State*, 965 So. 2d 1023, 1030 (¶ 27) (Miss. 2007) (citing *Dilworth v. State*, 909 So. 2d 731, 736 (¶18) (Miss. 2005)).

> "[D]eliberate design to kill a person may be formed very quickly, and perhaps only moments before the act of consummating the intent." *Gossett v. State*, 660 So. 2d 1285, 1293 (Miss. 1995) (quoting *Windham v. State*, 520 So. 2d 123, 127 (Miss. 1987)). This Court has acknowledged that deliberate-design connotes an intent to kill and may be inferred through the intentional use of

12

any instrument which, based on its manner of use, is calculated to produce death or serious bodily injury. ***Wilson v. State***, 936 So. 2d 357, 364 (Miss. 2006) (internal citations omitted). . . . This Court also has recognized that shooting a victim with a gun constituted deliberate-design murder. *See **Jones v. State***, 710 So. 2d 870 (Miss.1998); ***Hawthorne v. State***, 835 So. 2d 14 (Miss. 2003).

***Brown***, 965 So. 2d at 1030 (¶ 28).

¶26. In the instant case, to convict Rebecca for Jane's murder, the State had to prove to the jury beyond a reasonable doubt that (1) Rebecca killed Jane, (2) without the authority of law, and (3) with deliberate design to effect Jane's death. *Id.* at 1030 (¶ 27). Again, the Court considers "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ***Bush***, 895 So. 2d at 843 (¶ 16). Rebecca admitted she was in the room with Jane at the time of her death. She does not contest that the weapon used to kill Jane was her own. The jury heard testimony regarding the autopsy, lack of stippling, the crime scene, the presence of gunshot residue on both Jane's and Rebecca's hands, muzzle-to-garment tests, and the operation of the pistol. Both Rebecca and the State had ample opportunity to question the witnesses, personnel, and technicians who examined or handled that evidence. The jury also heard testimony about the history of Jane and Rebecca's relationship, and both parties questioned character witnesses for the jury's benefit. "The jury determines the weight and credibility of witness testimony." ***Nelson v. State***, 10 So. 3d 898, 905 (¶ 29) (Miss. 2009) (citing ***Moore v. State***, 933 So. 2d 910, 922 (¶ 43) (Miss. 2006)).

¶27. Viewing the evidence in the light most favorable to the prosecution, we hold that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable

13

doubt" and the jury's verdict is not "so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush*, 895 So. 2d at 843-44 (¶¶ 16, 18). The trial court did not abuse its discretion in denying Rebecca's post-trial motion for judgment as a matter of law.

**Conclusion**

¶28. The trial court did not err by admitting evidence of Rebecca's prior drug use or by denying Rebecca's motions for directed verdict. Further, the verdict is not against the weight and sufficiency of the evidence. Each issue raised by Rebecca is without merit, and her conviction and sentence are affirmed.

¶29. **CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. APPELLANT SHALL PAY $5,000 AND ALL COSTS OF COURT.**

**WALLER, C.J., RANDOLPH, P.J., LAMAR, CHANDLER, AND PIERCE, JJ., CONCUR. DICKINSON, P.J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.; DICKINSON, P.J., JOINS IN PART.**

**DICKINSON, PRESIDING JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶30. I agree with Justice Kitchens's conclusion that the admission of evidence regarding Jones's past drug abuse exceeded that which was necessary for the State to tell a complete story. But I do not share Justice Kitchens's view that the admission of this evidence was so

prejudicial as to require reversal. I find the error harmless beyond a reasonable doubt,[1] so I join Justice Coleman in result.

**KITCHENS, JUSTICE, DISSENTING:**

¶31. The State could have told a coherent story that adequately conveyed its theory of the case and outlined Rebecca Jones's motive to kill her mother without mentioning that Rebecca had abused drugs in the past. This extremely prejudicial evidence should not have been admitted because it was unnecessary and its probative value was minimal. Accordingly, I respectfully dissent.

¶32. "[A]s a general rule evidence of a crime other than the one for which the accused is being tried is not admissible." ***Ballenger v. State***, 667 So. 2d 1242, 1256 (Miss. 1997). Evidence of prior bad acts *may* be admissible, if that evidence can be used to show any of several noncharacter aspects of the crime listed in Mississippi Rule of Evidence 404(b). This Court has held that evidence that is "substantially necessary to present to the jury 'the complete story of the crime' . . . may be given even though it may reveal or suggest other crimes." ***Brown v. State***, 483 So. 2d 328, 330 (Miss. 1986) (quoting ***State v. Villavicencio***, 388 P.2d 245, 246 (Ariz. 1964)). Even if evidence is admissible under Rule 404(b), it still must be strained through the filter of Rule 403, which provides that admissible "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. . . ." M.R.E. 403. Accordingly, if the evidence admissible to tell a complete story

---

[1] ***Smith v. State***, 136 So. 3d 424, 435 (Miss. 2014) (citing ***Young v. State***, 99 So. 3d 159, 165 (Miss. 2012)) ("Errors in the admission of evidence are subject to a harmless-error analysis").

of the crime is unfairly prejudicial and not very probative, it is incumbent on a court to exclude it.

¶33.  The State argues that Rebecca's drug use in 1989 was relevant to her mother Jane's death in 2010 because it explained why Jane had the title to land that Rebecca thought rightfully was hers. The State further argues that Rebecca's drug use was the reason for Jane's having taken custody of Rebecca's daughter in 2003. According to the State and the majority, the motive for Rebecca's killing of Jane could not be explained without discussing Rebecca's past drug use. That simply is not the case.

¶34.  Rebecca Lynn Jones and her mother Jane had a tumultuous relationship. In 1989, Rebecca deeded some land to her mother, with the expectation that, one day, her mother would give the land back. In 2003, Rebecca's mother prevailed in a custody dispute with Rebecca over Rebecca's daughter. There was significant animosity between the two as a result. In 2010, Rebecca discovered that Jane was planning to sell the land that she had promised she one day was to return to Rebecca. Rebecca, angry at her mother for going back on her promise and still angry over her mother's custody of Rebecca's own daughter, decided to confront her mother about the land deal. During the visit, Rebecca shot her mother twice at close range. She did not call 911.

¶35.  It was altogether unnecessary to mention drugs in the telling of the foregoing narrative, which fully sets forth the prosecution's theory of the case. Rebecca was angry at her mother because the mother had obtained custody over Rebecca's daughter against Rebecca's wishes. She was angry at her mother because she was selling land that Rebecca believed rightfully to be hers.  She was not angry because she had used drugs in the past.

While Rebecca's past drug use may have contributed to the custody dispute and the land sale, her drug use in and of itself did not provide a homicidal motive and was unnecessary to the telling of a complete story about why Rebecca might have had a reason to want to shoot her mother, particularly when she had been sober for several years prior to the incident.

¶36. So the evidence of Rebecca's prior drug use was unnecessary to the telling of the story of the shooting from the State's perspective, it was unnecessary to explain a motive, and it therefore was inadmissible under Rule 404(b). However, the evidence becomes doubly inadmissible when filtered through Rule 403. "Rule 403 is an ultimate filter through which all otherwise admissible evidence must pass." *Jones v. State*, 920 So. 2d 465, 475 (¶ 32) (Miss. 2006) (quoting *Hoops v. State*, 681 So. 2d 521, 531 (Miss. 1996)). Under Rule 403, we must weigh the evidence's probative value against the danger that it would unfairly prejudice the defendant. As the evidence of the drug use was unnecessary to explain Rebecca's possible motive for killing her mother, it had little, if any, probative value. However, it had enormous potential for unfair prejudice. It would be easy for a jury to conclude that Rebecca was a drug-addled burden to her mother for most of her life, and that most of Rebecca's problems were caused by her drug addiction. In fact, in opening argument, the State said, "This is a story of culminating and escalating problems that the defendant had, problems that ended in murder. She has a lifelong history of drug abuse and drug use, cocaine use."

¶37. The evidence of Rebecca's prior drug use was unnecessary and far too remote in time to explain her motive. Rebecca went to her mother's home that fateful day because her mother was selling the land that Rebecca felt was rightfully hers. Rebecca resented her

17

mother for having obtained custody of Rebecca's daughter. Rebecca did not resent her mother because Rebecca had abused drugs in the past. Such evidence had little, if any, probative value, and, at the same time, it had great potential for unfair prejudice. In my opinion, the circuit court abused its discretion when it admitted the evidence. I would reverse Rebecca's conviction and remand for a new trial.

**KING, J., JOINS THIS OPINION. DICKINSON, P.J., JOINS THIS OPINION IN PART.**