# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-00084-COA

**DARIUS MONTRELL WAYNE A/K/A DARIUS WAYNE A/K/A DARIUS M. WAYNE A/K/A DARIUS WHITE**        APPELLANT

**v.**

**STATE OF MISSISSIPPI**        APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 12/16/2020 |
| TRIAL JUDGE: | HON. GERALD W. CHATHAM SR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | PHILIP CAREY HEARN |
| | ANNA KATHERINE ROBBINS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/26/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., GREENLEE AND McDONALD, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1. Shavez[1] Aldridge was killed in an altercation among a group of people on April 1, 2019. Among other counts, Darius Montrell Wayne was indicted for the first-degree murder of Shavez pursuant to Mississippi Code Annotated section 97-3-19(1)(a) (Rev. 2020).[2] A

---

[1] The victim's name is spelled "Shavez" in the indictment although it is sometimes spelled "Chavez" at other points in the record and the appellate briefs. The Court will refer to the victim as "Shavez."

[2] Section 97-3-19(1)(a) provides that "[t]he killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases: (a)

DeSoto County Circuit Court jury found Wayne guilty of murder under this count and not guilty of the other counts. The trial court denied Wayne's motion for judgment notwithstanding the verdict (JNOV) or a new trial and sentenced Wayne to a term of life in the custody of the Mississippi Department of Corrections (MDOC).

¶2. Wayne appeals, asserting that the trial court erred (1) by allowing the State to present rebuttal evidence consisting of Wayne's recorded statement to the police taken three days after the altercation; (2) by overruling Wayne's objection to the State's playing Wayne's entire hour-long recorded statement, rather than just those portions of Wayne's statement that impeached his trial testimony; and (3) by denying Wayne's post-trial motions. As to this final assignment of error, Wayne asserts that the State failed to present sufficient evidence to support the jury's verdict that he committed first-degree murder, rather than acting in self-defense, and the jury's verdict was against the overwhelming weight of the evidence for this reason. For the reasons addressed below, we find that these assignments of error are without merit. Accordingly, we affirm Wayne's conviction and sentence.

### PROCEDURAL HISTORY AND STATEMENT OF FACTS

¶3. A DeSoto County grand jury indicted Wayne, Az-Hakim Oliver, and Kalani Tiapula for conspiracy to commit murder (Count I), the first-degree murder of Shavez Aldridge (Count II), and the first-degree murder of Rodney Clark (Count III). Wayne, Oliver, and

---

When done with deliberate design to effect the death of the person killed, or of any human being, shall be first-degree murder."

Tiapula were tried together in a five-day trial beginning October 5, 2020.

¶4.     Mickquez Aldridge and Davion Austin, who were both present on the evening of the shooting, testified for the State.  They both testified that on April 1, 2019, they and Shavez were sitting at Shavez's grandmother's house on Tacoma Place (a cul-de-sac off of Lafayette Drive in Olive Branch, Mississippi) when Tiapula, Wayne, and Oliver pulled up to Wayne's grandmother's house, which was next door.

¶5.     The group began arguing, mainly about a previous gun trade between Wayne and Rodney Clark that had resulted in Wayne owing Rodney either a gun or money.  According to Mickquez and Davion, the co-defendants then drove off, and Oliver pointed a semi-automatic rifle out of the window of the car as they were leaving.  Mickquez and Davion further testified that a few minutes later, Wayne and Oliver walked back to Tacoma Place.  Oliver was carrying the semi-automatic rifle.  Wayne testified in his own defense at trial and admitted he was carrying a Taurus 9-millimeter handgun.  Davion testified that Oliver pointed the rifle at him, Shavez, and Mickquez and demanded they return "the gun." Davion said that he, Shavez, and Mickquez all told Oliver and Wayne that they did not have a gun.  At that point, Shavez called Rodney to bring the gun in question.

¶6.     Mickquez and Davion testified that Rodney and Keith Bowen then pulled up to the scene; Rodney and Wayne discussed the gun situation and came to an agreement.  The others were still arguing and this led to Oliver and Mickquez engaging in a "one-on-one" fight.  Davion testified that during the fight between Oliver and Mickquez, Wayne pulled a gun out

3

of his pocket and shot Shavez. Davion said he then saw Wayne chase Shavez around a house and he heard additional shots. When Wayne chose to testify in his own defense later in the trial, he admitted that he shot Shavez three times with a Taurus 9-millimeter handgun. Mickquez testified that no one from his group (i.e., himself, Davion, and Shavez) had a gun that day, and Davion also testified that the only people he saw that day with a gun were Wayne, Oliver, Tiapula, and Keith.

¶7.     Keith (who had arrived at the scene with Rodney) also testified for the State. He said he saw Wayne shoot Shavez as Shavez was at the back door of Tiapula's car.[3] Keith said he began shooting at Wayne "because he shot my cousin," but then he (Keith) saw that Tiapula was shooting at him and Mickquez, so he "took off running." Keith testified that the only people he was aware of that had guns on the scene that day were himself, Wayne, and Tiapula. Davion and Keith testified that Wayne, Tiapula, and Oliver (the co-defendants) left the scene in Tiapula's car. Shavez and Rodney died on the scene from gunshot wounds.

¶8.     Detective Sherrie Driver was assigned to investigate the April 1, 2019 shooting and testified for the State. Her investigation revealed that Wayne, Tiapula, and Oliver fled to Memphis to first hide out at the apartment home of one of Oliver's relatives. A Shelby County Fugitive Apprehension Team found Tiapula's car, with the car tags removed, parked outside of the Memphis apartment. Detective Craig Dickson, also on the case, testified that

---

[3] Bowen testified, "Once they [(Shavez and Wayne)] get around the car, Shavez get to the back door of the car, turn around [and Wayne] shoot. He shoot twice."

during a search of Tiapula's car, officers found her license plate, SKS semi-automatic rifle ammunition, a spent rifle casing, a live rifle bullet, and a Ruger 40-caliber handgun box. Officers also recovered an SKS from the apartment. The co-defendants were arrested at the Memphis home of another one of Oliver's relatives. Among the items seized during their arrest were a Ruger 40-caliber handgun, a box of 40-caliber ammunition, and a loaded magazine. Officer Ronnie Flanigan testified that officers later recovered Wayne's Taurus 9-millimeter handgun hidden under the bathroom sink at that home.

¶9.     Dr. David Arboe testified for the State as an expert in the field of forensic pathology. Dr. Arboe testified that Shavez had gunshot wounds to his chest, left buttock, and left calf. During Shavez's autopsy, Dr. Arboe removed three bullets that he sent to the crime lab. Dr. Arboe testified that Shavez's cause of death was "multiple gunshot wounds" and "that the manner of death . . . was homicide." This same information was set forth in Dr. Arboe's report that was admitted into evidence at trial.

¶10.    Felicia McIntire testified for the State as an expert in firearms and toolmark identification. She testified about the process of comparing unknown projectiles to known firearms. She opined that based on her analysis, the three projectiles recovered from Shavez's body had been fired from Wayne's Taurus 9-millimeter handgun.

¶11.    The State rested its case-in-chief and Wayne moved for a directed verdict, which the trial court denied.

¶12.    Wayne chose to testify at trial. He said that he was eighteen when the shooting

5

occurred and he was twenty at the time of trial. Wayne testified about how close he and Shavez had been growing up and that he had lived near him on Tacoma Place. He testified that in April 2019, however, he had been living in Memphis with Oliver's family because he had been receiving threatening messages about the gun transaction between him and Rodney. Wayne described what happened on the evening of the shooting, admitting he shot Shavez three times with a Taurus 9-millimeter handgun, but claiming that he shot in self-defense after he saw Shavez coming out of Tiapula's car with Oliver's semi-automatic rifle (the SKS).

¶13. Wayne admitted on cross-examination that he did not see Shavez with any gun before that time. Wayne also admitted that Shavez did not have a gun in his hand when he was running away from Wayne after Wayne shot him the first time. Wayne admitted that he shot Shavez two more times (in the back of Shavez's leg and buttock), but he added that "he [(Shavez)] was reaching inside his pants."

¶14. In rebuttal, the State recalled Detective Driver, who had obtained a statement from Wayne three days after the shooting. Over the defense's objections, the audio recording of Wayne's statement was admitted into evidence and played for the jury. As addressed in further detail below, in his recorded statement Wayne told Detective Driver that he shot Shavez after Shavez got Oliver's gun from Tiapula's car. He also vacillated between asserting that he did not chase Shavez and shoot him two more times, and his inconsistent representation that he did not remember doing so. Wayne's counsel cross-examined

6

Detective Driver, and the State conducted a brief redirect examination.

¶15. The State finally rested. Counsel for Wayne did not request an opportunity to present surrebuttal evidence in response to Detective Driver's rebuttal testimony or Wayne's recorded statement. Wayne renewed his motion for a directed verdict, which the trial court denied.

¶16. After the trial court instructed the jury and counsel presented their closing arguments, the jury deliberated and found Wayne guilty of first-degree murder under Count II of the indictment. The jury found Wayne not guilty on Counts I and III and found Oliver and Tiapula not guilty on all three Counts. After Wayne unsuccessfully moved for a JNOV or a new trial, the trial court sentenced Wayne to serve a term of life in the custody of the MDOC. Wayne appealed.

## DISCUSSION

### I. The State's Recall of Detective Driver as a Rebuttal Witness and the Introduction of Wayne's Recorded Statement

¶17. Wayne asserts that the trial court erred in allowing the State to introduce and play his recorded statement for the jury in rebuttal. According to Wayne, his statement should have been introduced during the State's case-in-chief. "The determination of whether evidence is properly admitted as rebuttal evidence is within the trial court's discretion." *Powell v. State*, 662 So. 2d 1095, 1099 (Miss. 1995) (citing *Wakefield v. Puckett*, 584 So. 2d 1266, 1268 (Miss. 1991)). Indeed, "[t]he Mississippi Supreme Court has advocated a liberal application of the rebuttal evidence rule." *Thompson v. State*, 230 So. 3d 1044, 1050 (¶18)

7

(Miss. Ct. App. 2017) (quoting *McGaughy v. State*, 742 So. 2d 1091, 1094 (¶19) (Miss. 1999)). As addressed below, we find no abuse of discretion in the trial court's allowing the State to recall Detective Driver and introduce Wayne's recorded statement in rebuttal.

¶18. We recognize that generally, "the State 'must offer all substantive evidence in its case-in-chief.'" *Id.* (quoting *Armstrong v. State*, 771 So. 2d 988, 999 (¶48) (Miss. Ct. App. 2000)). The State, however, "is entitled to present 'rebuttal testimony to explain, repel, counteract[,] or disprove evidence' offered by the defense." *Id.* (quoting *Williams v. State*, 539 So. 2d 1049, 1051 (Miss. 1989)). We find that this is plainly the case here because Wayne's recorded statement impeached his trial testimony regarding the circumstances surrounding the shooting and Wayne's claim that he acted in self-defense. This is important because in determining whether the State had proven Wayne did not act in self defense, the jury must decide whether "it was objectively reasonable for [Wayne] to believe he was in danger of imminent death or serious bodily harm" when he shot Shavez multiple times. *Franklin v. State*, 72 So. 3d 1129, 1136 (¶29) (Miss. Ct. App. 2011). The discrepancies between Wayne's trial testimony and his recorded statement relate directly to this issue.

¶19. First, at trial, Wayne testified that Shavez was pointing the gun at him before he shot in self-defense. Wayne testified that he first shot Shavez because during the Mickquez-Oliver fist fight, Shavez allegedly grabbed Oliver's SKS out of Tiapula's car and "was coming out the car with the SK[S]." Wayne then testified that "[w]hen [Shavez] got the barrel of the gun in my legs, I was afraid that if he bring it any further, he was going to

8

shoot considering . . . that they've been threatening me . . . [a]nd . . . his cousin was stomping my friend out. . . . I just reacted . . . I shot him in his chest[.]" Later during Wayne's testimony, Wayne's counsel had Wayne clarify this point. Counsel asked, "Let's go back to when he was coming out of the car with the rifle, okay, and he got it out of the car, and he was coming up and pointing it at you, right?" Wayne answered, "Yes, sir."

¶20. In his recorded statement, however, Wayne described the shooting several times, but never said Shavez pointed the gun at him. At one point during his questioning, Wayne said, "He went for the gun. He pulled the gun out [and] that's why I shot him." Detective Driver asked, "Did he point the gun at you?" Wayne responded, "I was scared he was about to. I mean, he didn't have time to point it at me." Wayne repeated several more times that Shavez did not point or aim the gun at him. We find that it was important for the jury to hear the two versions because whether Shavez pointed the gun at Wayne was relevant to the jury's assessment whether "it was objectively reasonable for [Wayne] to believe he was in danger of imminent death or serious bodily harm" when he shot Shavez. The recorded statement was proper rebuttal evidence for this reason.

¶21. Second, Wayne's trial testimony about chasing and shooting Shavez after he shot Shavez the first time markedly contradicted Wayne's recorded statement. Wayne admitted at trial that he chased Shavez around a house after the first shot, and said he shot him two more times after he saw Shavez reaching for his "personal gun" and "pulling [it] out" during the chase. Wayne testified that he chased Shavez and shot him again,

9

[b]ecause I saw [S]havez reaching for his gun. . . . When we got behind the house, he pulled his gun out and I shot at him again. The bullet hit him in his leg, and he tried to turn; but he still pointing the gun. And then I shot again, and I saw the bullet hit him in his butt. And then at that point, that's when I turned around because I saw him turning around, and I took off back to the car.

During cross-examination, Wayne admitted that he did not see Shavez with a firearm when he chased him around the house and shot him twice more, but claimed that Shavez "was reaching inside his pants" when he fired the second and third shots at him.

¶22. In Wayne's recorded statement, however, Detective Driver asked Wayne at least three times in the first thirty minutes of the interview about what happened after he shot Shavez the first time—and each time Wayne claimed that he "blanked out" or "blacked out" after the first shot and he "[didn't] remember what happened after that" until he got in Tiapula's car to leave.[4] As the interview progressed, Wayne claimed "blanking out" after the first shot six more times and also outright denied chasing Shavez at all.

¶23. Based upon these discrepancies between Wayne's trial testimony and his recorded statement, we find that Wayne's recorded statement was properly allowed as rebuttal evidence because it counteracted Wayne's trial testimony regarding the details of his self-defense claim that had not been previously revealed. We find that the State was entitled

---

[4] The first time Wayne was asked what happened after he first shot Shavez, he said "I blacked out. I don't remember what happened after I shot him and the gun jammed . . . . Everything after that [is] blank. All I remember [is] getting in the car [and] we pulled off." The second time, he said "I'm just thinking I shot him and he ran off. Cause after I shot him and he ran I don't remember nothing else." The third time, he said "I blacked out after I shot him and the gun jammed . . . . I don't remember what happened after that. I just remembered getting in the car."

10

to show the jury that Wayne's trial testimony, in which Wayne added significant details supporting his self-defense claim, varied materially from the statement that he gave just three days after Shavez's murder. Wayne's recorded statement rebutted key testimony concerning his self-defense claim. Accordingly, we find that it was properly admitted during rebuttal.

¶24. Wayne relies on *Riley v. State*, 248 Miss. 177, 186, 157 So. 2d 381, 385 (1963), to support his assertion that the trial court abused its discretion in allowing his hour-long recorded statement to be played to the jury without him being given the opportunity to reply by surrebuttal. In *Riley*, the supreme court observed that *when doubt exists* on the question whether evidence is proper rebuttal evidence,

> the court should resolve the doubt in favor of the reception in rebuttal where (1) its reception will not consume so much additional time as to give an undue weight in practical probative force to the evidence so received in rebuttal, and (2) the opposite party would be substantially as well prepared to meet it by surrebuttal as if the testimony had been offered in chief, and (3) the opposite party upon request therefor is given the opportunity to reply by surrebuttal.

*Id.*

¶25. We find that Wayne's reliance on *Riley* is misplaced. In this case, we have no "doubt" that the trial court properly allowed Wayne's recorded statement as rebuttal evidence, and thus we find it is unnecessary to analyze the *Riley* factors. In any event, even if we found there was some "doubt" on the issue, we would still find no abuse of discretion in the trial court's allowing Wayne's entire recorded statement in rebuttal. Wayne points to the fact that his recorded statement was approximately sixty minutes long—but we observe that the statement was played in the course of a three-day trial and includes approximately twenty

11

minutes of silence while Wayne wrote out his description of the incident. We do not find this unduly prejudicial so as to constitute an abuse of discretion on the trial court's part in allowing the recording to be played in rebuttal.

¶26. Wayne also asserts that "[t]he trial judge never allowed the [d]efense a surrebuttal." On this point, we simply observe that no such request was made by the defense, as required by the third factor under the *Riley* test, which provides that "the opposite party *upon request* . . . [be] given the opportunity to reply by surrebuttal." *Id.* (emphasis added). "The well-recognized rule is that a trial court will not be put in error on appeal for a matter not presented to it for decision." *Casey v. State*, 302 So. 3d 617, 628 (¶37) (Miss. 2020) (quoting *Moffett v. State*, 49 So. 3d 1073, 1088 (¶41) (Miss. 2010)). We find that principle applies here. In sum, for all the reasons addressed, we find that this assignment of error is without merit.

**II.     The Trial Court's Admission of Wayne's Recorded Statement in its Entirety**

¶27. Wayne asserts that the trial court abused its discretion by permitting the State to play his entire recorded statement to the jury rather than only the portions that impeached his trial testimony. We find this assignment of error without merit for the reasons discussed below.

¶28. To briefly summarize the relevant trial proceedings on this point, Wayne rested after presenting testimony from one witness and testifying on his own behalf. The State then advised the trial court that it would present rebuttal evidence through Detective Driver. The State recalled Detective Driver to the stand, and then sought to introduce Wayne's recorded

statement. Defense counsel objected, arguing that the recorded statement was "improper impeachment" because "Mr. Wayne did not deny making those statements." The trial court overruled the objection after determining that the statement had been provided in discovery. Wayne's counsel then further objected to admission of the recorded statement, arguing that the State should only be permitted to play the portions of the pretrial statement that impeached Wayne's trial testimony. The trial court also overruled that objection and allowed the State to play the entire recorded statement to the jury.

¶29. Wayne asserts that the trial court's ruling was reversible error, but he cites no legal authority to support this assignment error. "Failure to cite relevant authority obviates the appellate court's obligation to review such issues." *Arrington v. State*, 267 So. 3d 753, 756 (¶9) (Miss. 2019) (quoting *Byrom v. State*, 863 So. 2d 836, 853 (¶35) (Miss. 2003)). Wayne's failure to cite legal authority "renders [this issue] waived. No further discussion is necessary." *Id.*; *see also* M.R.A.P. 28(7) (requiring "citations to the authorities, statutes, and parts of the record relied on" to support the contentions in appellant's brief).

¶30. Procedural bar notwithstanding, we also find that Wayne's assignment of error lacks merit because his entire recorded statement, as a whole, serves as impeachment evidence with respect to his trial testimony concerning his self-defense claim. In the first thirty minutes of his recorded statement, Wayne described shooting Shavez several times and did not mention that Shavez had pointed a gun at him. When Detective Driver specifically asked him whether Shavez pointed the gun at him, Wayne said he did not. The remainder of the

13

recorded statement included Wayne vacillating between not remembering and affirmatively denying chasing and shooting Shavez after he shot him the first time. Under these circumstances, we find that the entire recorded statement was impeachment evidence and properly played for the jury. Accordingly, we find that Wayne's second assignment of error is both procedurally barred and without merit.

### III. The Trial Court's Denial of Wayne's Post-Trial Motions

#### A. Sufficiency of the Evidence

¶31. Wayne asserts that the trial court erred in denying his JNOV motion because, according to Wayne, "[t]here is no way from the presented evidence and testimony that a reasonable jury could have concluded that Wayne committed deliberate[-]design murder, and did not act in self-defense." We review de novo the denial of a JNOV motion "because [it is a] challenge [to] the legal sufficiency of the evidence." *Brooks v. State*, 203 So. 3d 1134, 1137 (¶11) (Miss. 2016).

¶32. "In applying de novo review, we determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Body v. State*, 318 So. 3d 1104, 1108 (¶11) (Miss. 2021) (quoting *Johnson v. State*, 235 So. 3d 1404, 1410 (¶12) (Miss. 2017)). "This Court may only reverse a denial of a JNOV motion when, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." *Wilson v. State*,

276 So. 3d 1241, 1262 (¶57) (Miss. Ct. App. 2018) (quoting *Anderson v. State*, 154 So. 3d 42, 50 (¶20) (Miss. Ct. App. 2014)). In this regard, "[t]his Court must accept all evidence supporting the guilty verdict as true, and the State must be given the benefit of all reasonable inferences that can be drawn from the evidence." *Body*, 318 So. 3d at 1108 (¶12).

¶33. "To prove first-degree murder, the prosecution must prove the following elements beyond a reasonable doubt: '(1) the defendant killed the victim; (2) without authority of law; and (3) with deliberate design to effect his death.'" *Jones v. State*, 154 So. 3d 872, 880 (¶13) (Miss. 2014) (quoting *Brown v. State*, 965 So. 2d 1023, 1030 (¶27) (Miss. 2007)); Miss. Code Ann. § 97-3-19(1)(a). Wayne asserts that the State failed to prove first-degree murder because he acted in self-defense. "When self-defense is raised, the State bears the burden of proving beyond a reasonable doubt that the defendant was not acting in necessary self-defense." *Allen v. State*, 299 So. 3d 917, 925 (¶26) (Miss. Ct. App. 2020) (quoting *Harris v. State*, 937 So. 2d 474, 481 (¶23) (Miss. Ct. App. 2006)). A killing is justifiable "[w]hen committed in the lawful defense of one's own person or any other human being, where there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished." Miss. Code Ann. § 97-3-15(1)(f) (Rev. 2020).

¶34. In this case, Wayne admitted at trial that he shot Shavez three times, with the second and third shots being fired when he was chasing Shavez around a house. The State medical examiner's testimony and his report confirmed that the second and third shots were in

15

Shavez's left calf and left buttock. Mickquez, an eyewitness who was with Shavez that day, testified that Shavez did not have a gun on the day of the shooting. Davion, who was also with Shavez, testified that he did not see anyone with a gun that day except the co-defendants and Keith Bowen. And Keith testified that the only people he knew of that were armed that day were himself, Wayne, and Tiapula. Moreover, the record reflects that the only firearms recovered in connection with the investigation of Shavez and Rodney's deaths belonged to the co-defendants. No gun was recovered from the victim's body or from the scene. We find that a reasonable jury could infer that Shavez was unarmed on the day of the shooting.

¶35. We recognize that Wayne testified that he fired the first shot in self-defense when Shavez was reaching for the SKS in Tiapula's car and, according to Wayne's trial testimony, then pointed the gun at him. Wayne further asserts that the first shot to Shavez's chest, when Shavez was allegedly armed with Oliver's SKS, was the fatal shot, so the two additional shots he fired when he was chasing Shavez do not negate his self-defense claim. Wayne points to no expert testimony (or any other evidence) that supports his theory that his first shot to Shavez's chest was the fatal shot—and the record evidence contradicts Wayne's theory. The medical examiner's expert opinion was that Wayne's cause of death was "multiple gunshot wounds," and this same opinion is reflected in the medical examiner's report.

¶36. With respect to the second and third shots, we recognize that Wayne testified that Shavez was reaching for his "personal gun" when Wayne fired the last two shots. But

16

Wayne also admitted in cross-examination that when he began chasing Shavez, Shavez did not have a gun in his hand. And, as we have noted above, other witnesses testified that Shavez did not have a gun that day, there was no gun recovered from Shavez's body at the scene of the shooting, and the only firearms ultimately recovered belonged to the co-defendants.

¶37. We find that the State presented sufficient proof to support the jury's finding that Wayne did not act in necessary self-defense in shooting Shavez multiple times. Even if a jury could have reasonably found that Wayne acted in self-defense when he shot Shavez the first time, we find that with respect to the second and third shots, the jury could reasonably infer that Shavez was unarmed and that these additional shots were unnecessary and thus negated Wayne's self-defense claim. *See Harris*, 937 So. 2d at 482 (¶27) (observing that a jury may reasonably reject a self-defense claim even where the first shot was in necessary self-defense if "continued shooting became unnecessary"). Further, the jury heard testimony that Wayne immediately fled the scene and hid out in Memphis, actions a jury may reasonably find relevant in considering Wayne's self-defense claim. *Cf. States v. State*, 88 So. 3d 749, 757 (¶36) (Miss. 2012) (recognizing that in general, "evidence of flight is admissible as evidence of consciousness of guilt" though a specific "flight" jury instruction is proper only under limited circumstances).[5]

¶38. Regarding the other elements of first-degree murder, Wayne admitted that he shot

---

[5] Whether the State was entitled to a "flight" jury instruction is not an issue before us.

Shavez three times, Davion and Keith testified that they saw Wayne shoot Shavez, and Shavez died on the scene from the "multiple gunshot wounds." Wayne asserts that he could not have formed the requisite intent to kill Shavez between the first shot and when he began to chase him and shot him twice more. But "[i]t is well-established that . . . 'deliberate design[] may be inferred from the use of a deadly weapon.'" *Holliman v. State*, 178 So. 3d 689, 698 (¶19) (Miss. 2015) (quoting *Anderson v. State*, 79 So. 3d 501, 507 (¶22) (Miss. 2012)); and "[d]eliberate design to kill a person may be formed very quickly . . . perhaps only moments before the act of consummating the intent." *Allen*, 299 So. 3d at 925 (¶28) (quoting *Holliman*, 178 So. 3d at 698 (¶19)). We find that the jury could infer in this case that Wayne intended to kill Shavez by shooting him, then chasing him and shooting him two more times, once in the back of his left leg and once in the buttocks. *Id.* Viewing the evidence in the light most favorable to the verdict and granting the State the benefit of all reasonable inferences that flow from the evidence presented, we find that the State proved beyond a reasonable doubt that Wayne was not acting in justifiable self-defense and that there was sufficient evidence to support Wayne's conviction for first-degree murder.

### B. Weight of the Evidence

¶39. Wayne also asserts that the trial court erred in denying his motion for a new trial. He asserts that "the verdict was overwhelmingly contrary to the weight of the evidence" in this case based on his version of the circumstances surrounding the shooting as addressed above. "When reviewing a challenge to the weight of the evidence, the Court will disturb a jury

18

verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Jones*, 154 So. 3d at 880 (¶24) (internal quotation mark omitted). In making a determination on this issue, "[w]e review the evidence in the light most favorable to the verdict . . . and review the trial court's denial of a motion for a new trial under an abuse-of-discretion standard." *Wilson*, 276 So. 3d at 1260 (¶48) (citation omitted). In so doing, we bear in mind that "[w]hen evidence or testimony conflicts, the jury is the sole judge of the weight and worth of evidence and witness credibility." *Williams v. State*, 285 So. 3d 156, 160 (¶17) (Miss. 2019).

¶40. It was the sole province of the jury to either believe Wayne's version of the events surrounding Shavez's shooting or the testimonies of the State's witnesses and other evidence presented. We find that the jury's resolution of the conflicting evidence in this case does not constitute an "unconscionable injustice" and, accordingly, we find no abuse of discretion in the trial court's denying Wayne's motion for a new trial. Wayne's third assignment of error is without merit.

¶41. For the reasons addressed above, we affirm Wayne's conviction and sentence.

¶42. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**